FILED
2024 Sep-04 PM 01:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LOWRENZO TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 2:24-cv-0056-JHE |
| | ) | |
| BIRMINGHAM AIRPORT AUTHORITY, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This is an employment discrimination case in which Plaintiff Lowrenzo Taylor brings claims against the Birmingham Airport Authority (the "BAA") and four officers and/or employees thereof: Ronald F. Mathieu, Marcelo Lima, James Payne, and Paulette Maddox (all collectively "Defendants"). The parties have consented to an exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 14). Now before the undersigned are two motions, both filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The first is a motion by all Defendants to dismiss (Doc. 5) Plaintiff's original complaint (Doc. 1 ("Complaint" or "Compl.")). In response to that motion, Plaintiff filed a First Amended Complaint (Doc. 10 ("Amended Complaint" or "Amd. Compl.")). Defendants Mathieu and Maddox filed a motion to dismiss the Amended Complaint (Doc. 12) aimed at all claims asserted against them in that pleading. Upon consideration, the motion to dismiss the Complaint (Doc. 5) is **DENIED AS MOOT** while the motion to dismiss the Amended Complaint (Doc. 12) is **GRANTED**.

## I. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of all or part of a complaint for failure to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.; accord Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"At the motion to dismiss stage, [the court] must accept all well-pleaded facts contained in the operative complaint as true and construe all reasonable inferences in the light most favorable to the plaintiff." *MacPhee v. MiMedx Grp., Inc.*, 73 F.4th 1220, 1228 (11th Cir. 2023).  To that end, under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief."  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678. (citations and internal quotation marks omitted).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).  Thus, it is not proper to assume that the

plaintiff can prove facts it has not alleged or that a defendant has violated the law in ways that have not been alleged.  *See Twombly*, 550 U.S. at 563 n. 8 (*citing Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

## II. Background

### A.  Facts

Plaintiff's original and amended pleadings both outline the same underlying events.  (*See generally* Compl., Amd. Compl.).  Plaintiff alleges that he is a black male and was employed as an Airport Engineer by the BAA, which operates the Birmingham-Shuttlesworth International Airport.  (*See* Compl. ¶¶ 4, 5, 10; Amd. Compl. ¶¶ 4, 5, 6, 10(2)).[1]  In 2018, Defendant Lima, alleged to be a "white male … of Hispanic ancestry" and the BAA's Vice President of Planning and Development, became Plaintiff's direct supervisor.  (Compl. ¶¶ 6, 13; Amd. Compl. ¶¶ 10(1), 13).

On December 2, 2021, Plaintiff was summoned to a meeting with Lima and Defendant Maddox, a black female and the BAA's Vice President of Human Resources.  (Compl. ¶¶ 8, 17; Amd. Compl. ¶¶ 12(1), 17).  Maddox informed Plaintiff that he was being suspended for three days without pay due to his failure to keep Lima informed of the status of a project Plaintiff was managing, the "Taxiway G Rehabilitation Project" ("TGRP"). She also provided Plaintiff with a Disciplinary Action Form indicating that the BAA incurred $60,000 in additional construction management fees on the TGRP due to Plaintiff's failure to keep Lima apprised of progress. (Compl. ¶ 17; Amd. Compl. ¶ 17).  Maddox was not Plaintiff's supervisor and did "not observe or

---

[1] The Amended Complaint contains two different paragraphs each numbered "9," "10," "11," and "12."  The first of these paragraphs, which appear on page 3 of the Amended Complaint, will be referred to as "9(1)," "10(1)," etc.  The second set, appearing on page 4 of the pleading, are referred to as "9(2)," "10(2)," etc.

inspect his daily work." (Compl. ¶ 16; Amd. Compl. ¶ 16). At the meeting, Plaintiff verbally disputed the charge, pointing out that issues arise on most construction projects and that there are penalties for contractors who fail to meet deadlines. (Compl. ¶ 18; Amd. Compl. ¶ 18). He further claimed that Lima had been copied on the project activities, materials testing, project area closures, tenant notices, and the contractor's recovery schedules. (Compl. ¶ 18; Amd. Compl. ¶ 18). At the close of the meeting, Maddox stated that the suspension was "final" and that because Plaintiff's failure was "so egregious, the suspension would be his 'Final Warning.'" (Compl. ¶ 18; Amd. Compl. ¶ 18). On January 7, 2022, Plaintiff further responded in writing to the suspension and submitted documents supporting his position. (Compl. ¶¶ 18, 20, 21; Amd. Compl. ¶¶ 18, 20, 21). Plaintiff also alleges, upon information and belief, that the BAA has collected over $90,000 from a construction company for 64 days of delays in its completion of the TGRP contract. (Compl. ¶ 20; Amd. Compl. ¶ 20).

On February 11, 2022, Lima summoned Plaintiff to another meeting, at which Maddox and Defendant Payne, a white male and the BAA's Chief Operating Officer, were also present. (Compl. ¶¶ 7, 22; Amd. Compl. ¶¶ 7, 22). At this meeting Plaintiff was told that his employment was terminated, effective immediately. (Compl. ¶ 22; Amd. Compl. ¶ 22). Plaintiff says he was given a "pretextual reason" for his discharge: that he had purportedly altered an email regarding a pending project to make it appear as if the email had been sent by Lima when it was not.[2] (Compl. ¶ 23; Amd. Compl. ¶ 23). Plaintiff has no recollection of sending such an email and claims that Defendants refused his request to see a copy of it. (*See* Compl. ¶¶ 24, 25; Amd. Compl. ¶¶ 24, 25).

---

[2] Neither the Complaint nor the Amended Complaint indicates who specifically told the Plaintiff that his employment was being terminated or who informed him of the allegedly altered email.

4

Plaintiff claims that both his suspension and termination "by the BAA [were] because of his race." (Compl. at p. 1, unnumbered introductory sentence; Amd. Compl. at p. 1, unnumbered introductory sentence). Plaintiff alleges that "[t]he 'cats [sic] paw' decisionmakers" on both actions were Defendants Lima and Payne." (Compl. ¶ 27; Amd. Compl. ¶ 27). Plaintiff further asserts that Defendant Mathieu, a black male and the BAA's Chief Executive Officer, "approved the discharge of Plaintiff, based solely on the recommendations of Defendants Lima and Payne." (Compl. ¶¶ 5, 26; Amd. Compl. ¶¶ 9(1), 26). Following his termination, Plaintiff was replaced by a white male with less experience than Plaintiff but who was paid more. (Compl. ¶ 28; Amd. Compl. ¶ 28). Finally, Plaintiff claims that within two years of his own termination another, unnamed, black engineer was also "fired by the BAA because of his race." (Compl. ¶ 30; Amd. Compl. ¶ 30).

Based on these allegations, the original Complaint set forth claims for relief in two counts. (*See* Compl. at pp. 6-8). Count I alleged that all Defendants were liable under 42 U.S.C. § 1983 ("Section 1983"), for discriminating on the basis of race, in violation of the Equal Protection Clause of the Fourteenth Amendment. (Compl., Count I, ¶¶ 31-32). Those claims were premised on the allegation that Defendants had acted "under color of state law" (Compl. ¶ 31), because, Plaintiff asserted, "BAA is an agency of the City of Birmingham, Alabama, …. [o]perated by a seven-member Board of Directors … appointed by the Mayor of Birmingham and approved by the Birmingham City Council." (Compl. ¶ 4). Count II asserted parallel claims against all Defendants pursuant to 42 U.S.C. § 1981 ("Section 1981") "via § 1983." (Compl., Count II, ¶¶ 33-37).

### B. Procedural History

Defendants responded by collectively filing a Rule 12(b)(6) motion to dismiss the Complaint. (Doc. 5). It raised two basic arguments. First, Defendants sought dismissal of all

claims in the Complaint on the basis that "the BAA and its employees are private parties—not state actors" (Doc. 5 at 6), and that the Complaint's allegations are insufficient to support an inference otherwise. (*Id.* at 6-9; *see also* Doc. 5-1). Defendants thus argued that the Complaint failed to support the assertion that Defendants acted "under color of law" as required for liability under § 1983. (*See id.* at 3-9). Second, Defendants Maddox and Mathieu sought dismissal of the claims against them, individually, on the basis that Plaintiff did not sufficiently allege that Maddox or Mathieu personally engaged in intentional race discrimination. (*See id.* at 10-11).

Plaintiff responded by filing the Amended Complaint (Doc. 10), which sets out the same underlying events as the original. Plaintiff alleges in the Amended Complaint that "BAA is a municipal airport authority incorporated under Ala. Code § 4-3-47" and that it "exercises many traditional government powers and performs many traditional government functions," including the "exercise of powers of eminent domain subject to the provisions of Title 18 of the Alabama Code." (Amd. Compl. ¶ 6). Plaintiff also states, however, that he "accepts Defendant's [sic] judicial admission that they are 'private parties—not state actors,'" and he thus brings "claims pursuant to 42 U.S.C. § 1981 against all defendants." (Amd. Compl. ¶ 2; *id.* ¶ 32). Notwithstanding, Plaintiff still "pleads alternatively pursuant to 42 U.S.C. § 1983 in the event that any Defendant later seeks to assert qualified immunity, sovereign immunity, or other defenses available only to state actors." (*Id.* ¶¶ 3, 32; *see also id.* ¶¶ 4, 34). Defendants BAA, Lima and Payne have filed an Answer to the Amended Complaint that generally denies liability. (Doc. 11).

In response to the Amended Complaint, Defendants Mathieu and Maddox then filed the Motion to Dismiss the Amended Complaint now before the undersigned. (Doc. 12). In it, Mathieu and Maddox essentially reassert the arguments raised on their behalf in the Motion to Dismiss the Complaint (Doc. 5), *i.e.*, that Plaintiff does not allege sufficient facts to support that either Mathieu

or Maddox personally discriminated against Plaintiff because of race.  (Doc. 12 at 3-5).  Plaintiff

has filed an opposition to the Motion to Dismiss the Amended Complaint (Doc. 16), and Mathieu

and Maddox have filed a reply (Doc. 17) to the opposition.

### III. Discussion

#### A.  Defendants' Motion to Dismiss the Complaint

The motion to dismiss (Doc. 5) is aimed at the original Complaint (Doc. 1) and filed by all

Defendants collectively.  In response to that motion, Plaintiff filed the Amended Complaint.  (Doc.

10).  That amendment supersedes the original to become the operative pleading in the case.  *See*

*Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007).  As a result, the original

Complaint is considered "abandoned … and … no longer part of the pleader's averments against

his adversary."  *Pintado v. Miami-Dade Housing Auth.*, 501 F.3d 1241, 1243 (11th Cir. 2007).

The undersigned thus concludes that Defendants' Motion to Dismiss the Complaint has been

rendered moot.  *See Glass v. City of Glencoe*, 2017 WL 1407477, at *2 n. 5 (N.D. Ala. Apr. 20,

2017); *see also Taylor v. Alabama*, 275 F. App'x 836, 838 (11th Cir. 2008) ("Subsequently,

Plaintiffs amended their complaint and Defendants' motion to dismiss became moot.").

#### B.  Defendants Mathieu and Maddox's Motion to Dismiss the Amended Complaint

In response to the Amended Complaint, Defendants Mathieu and Maddox moved to

dismiss all claims raised against them individually.  (Doc. 12).  In the Amended Complaint,

Plaintiff alleges that all Defendants, including Mathieu and Maddox, are liable under § 1981 or,

alternatively, § 1983.  (*See* Amd. Compl. ¶¶ 3, 4, 32, 33, 34).  Mathieu and Maddox argue that the

Amended Complaint fails to state a claim against them for which relief can be granted.

Section 1981 provides in relevant part, "All persons … shall have the same right … to

make and enforce contracts … as is enjoyed by white citizens," 42 U.S.C. § 1981(a), which

"includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).  Section 1981 thus prohibits "race discrimination in the making and enforcement of public and private contracts, including employment contracts."  *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1320-21 (11th Cir. 2023) (*quoting Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999)).  A Section 1981 plaintiff must show purposeful, intentional discrimination, *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982); and that they would not have been subjected to the challenged adverse action but for race.  *See Comcast Corp. v. National Ass'n of African American-Owned Media*, 589 U.S. 327, 331-32 (2020); *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1297 (11th Cir. 2021).

Section 1983 provides in pertinent part: "Every person who, under color of any statute ... of any State ... subjects ... any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...." 42 U.S.C. § 1983.  Section 1983 is not a source of substantive federal rights; rather, it "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979) (citation omitted).  A plaintiff may, however, invoke § 1983 to redress a violation of the Equal Protection Clause of the Fourteenth Amendment, which prohibits race discrimination in state and municipal employment.  *See Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1268 (11th Cir. 2003).  As under § 1981, a plaintiff suing pursuant to § 1983 for race discrimination in violation of the Equal Protection Clause must prove purposeful, intentional discrimination, *see Washington v. Davis*, 426 U.S. 229, 239 (1976), and that he would not have suffered the challenged adverse action but for race.  *See Babb v. Wilkie*, 589 U.S. 399, 413 (2020); *Poer v. Jefferson Cnty. Comm'n*, 2022 WL 1315310, at *6 & n. 3 (N.D.

Ala. Mar. 28, 2022), *aff'd*, 2024 WL 1904568 (11th Cir. May 1, 2024).  Further, § 1983 is the exclusive vehicle for relief to redress rights secured by § 1981 against governmental actors.  *See Butts v. County of Volusia*, 222 F.3d 891, 893 (11th Cir. 2000) (*citing Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–32 (1989)); *see also Bryant v. Jones*, 575 F.3d 1281, 1288 (11th Cir. 2009).

### i.   Standards for Individual Liability Under §§ 1981 and 1983 and the Cat's Paw Doctrine

The issues presented by the motion to dismiss the Amended Complaint relate to: (1) the standards for imposing *individual* liability under § 1981 and § 1983 and (2) whether the allegations of the Amended Complaint are sufficient in light of those standards to state such claims against Mathieu or Maddox.  Mathieu and Maddox effectively concede that Plaintiff's claims might proceed provided that the Amended Complaint contains "enough factual matter (taken as true) to suggest intentional race discrimination" and wrongful conduct by Maddox or Mathieu. (Doc. 12 at 3-4 (*quoting Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245-46 (11th Cir. 2015)).  To the extent Plaintiff has alleged (and, indeed, Defendants themselves now insist) that Defendants are private parties, Plaintiff's claims might proceed directly under § 1981.  *See Langston v. Lookout Mountain Cmty. Servs.*, 775 F. App'x 991, 995 n. 7 (11th Cir. 2019).  Conversely, insofar as Plaintiff continues to maintain in the alternative that Defendants are government actors, Plaintiff's claims would have to proceed through § 1983.  *See id.* (*citing Jett, supra*); *see also Busby*, 931 F.2d at 771 n. 6 (recognizing that the § 1981 claims against government defendants "effectively merged into" parallel § 1983 claims).

While the Defendants' motion to dismiss the Complaint contested whether the Complaint sufficiently alleged that Defendants were acting under color of law as required for liability under § 1983, Mathieu and Maddox's motion to dismiss the Amended Complaint raises no such issue.

In fact, the motion cites neither § 1981 nor § 1983 nor uses the phrase "color of law." (*See* Doc. 12). Instead, the motion to dismiss the Amended Complaint argues that the claims against Mathieu and Maddox fail because Plaintiff has not alleged facts sufficient to attribute intentionally discriminatory conduct to them personally. (*See id.* at 3-5). Maddox argues separately that "there is no allegation that [she] was a decisionmaker with respect to any adverse action." (*Id.* at 4). Mathieu similarly emphasizes that he allegedly "approved the discharge of the Plaintiff, based *solely* on the recommendation of Defendants Lima and Payne" (*id.* (*quoting* Amd. Compl. ¶ 26 (emphasis in motion to dismiss)). Mathieu and Maddox highlight Plaintiff's express allegation that Defendants Lima and Payne, were "[t]he 'cats [sic] paw' decisionmakers" in both Plaintiff's suspension and termination of his employment. (*Id.* (*citing* Amd. Compl. ¶ 27)). Moreover, neither side attempts to distinguish between the standards or elements of personal liability under § 1981 as opposed to § 1983 as they might relate to the instant motion.

### a. Individual Liability Under § 1983

Unlike under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, individuals may be subject to liability in their personal capacity under § 1983 for intentional discrimination in public employment. *See Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1503-04 (11th Cir. 1995); *Busby*, 931 F.2d at 772-773, 775-76, 778 & n. 13. Such "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. However, there is no respondeat superior or vicarious liability under § 1983 against individual supervisors or officials for the unlawful actions of their subordinates. *See Iqbal*, 556 U.S. at 675-

77.  Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Id.* at 677.  As a result, a § 1983 "plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 676.  "Where the claim is invidious discrimination …, the plaintiff must plead and prove that the defendant acted with discriminatory purpose."  *Id.*  The Eleventh Circuit has further recognized that an individual "supervisor may be liable [under § 1983] for the unconstitutional acts of his subordinates when he personally participates in those acts or when a causal connection exists between his actions and the constitutional deprivation."  *Christmas v. Nabors*, 76 F.4th 1320, 1330 (11th Cir. 2023).  "A causal connection exists, in turn, when the 'facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id.* (*quoting Douglas v. Yates*, 535 1316, 1322 (11th Cir. 2008)).

### b.  Individual Liability Under § 1981

Circuit precedent likewise supports that individual liability may lie under § 1981 against persons who have themselves intentionally caused an infringement of contractual rights because of race.  *See Bryant*, 575 F.3d at 1310 n. 33; *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1176 (11th Cir. 2003) ("[B]oth [42 U.S.C. § 1981 and 1983] provide for individual liability"); *Okwan v. Emory Healthcare Inc.*, 2021 WL 4099236, at *1 n. 1 (11th Cir. Sept. 9, 2021).  Mathieu and Maddox do not dispute that proposition.  (*See* Doc. 17 at 2).  Unlike with a governmental employer sued under § 1983, a private corporate employer (here the BAA) sued under § 1981 may be liable under respondeat superior for the unlawful discriminatory employment decisions and actions of its employees occurring within the scope of their employment.  *See Ziyadat*, 3 F.4th at 1298.  However, absent a master-servant or other agency relationship upon which vicarious liability

11

might be founded, one party is not liable under § 1981 for the racially discriminatory misconduct of another. *See General Bldg. Contractors Ass'n,* 458 U.S. at 391-95 (holding that defendant employer was not liable under § 1981 for the racially discriminatory decisions of a labor union in the selection of workers for jobs because there was no master-servant relation between the union and the employer). Therefore, individual supervisors and officials *typically are not* vicariously liable in their personal capacity under § 1981 for the racially discriminatory actions of their subordinates or other co-employees, because such personnel are normally considered the employees of their *corporate employer*, not of the supervisor or official individually. *See Jones v. Mill*, 2016 WL 245431, at *4 (N.D. Ala. Jan. 21, 2016).

Accordingly, to state claims for individual liability against Mathieu and Maddox under § 1981, Plaintiff must plead sufficient facts plausibly supporting that Mathieu and Maddox, through their "own individual actions," have "acted with discriminatory purpose" to infringe Plaintiff's contractual rights. *See Iqbal*, 556 U.S. at 676. The Eleventh Circuit has further indicated that individual supervisors may be personally liable under § 1981 as under § 1983, *i.e.*, "either when the supervisor personally participates in the alleged … violation or when there is a causal connection between actions of the supervising official and the alleged … deprivation." *Bryant*, 575 F.3d at 1300 (addressing § 1983 claims alleging violations of both § 1981 and the Equal Protection Clause); *see also Burstein v. Emtel, Inc.*, 137 F. App'x 205, 208 (11th Cir. 2005) (analogizing that individual liability under § 1981 to such liability under § 1983, which may arise "for decisions [the individual defendant] is personally involved in making" (*citing Quinn*, 330 F.3d at 1326-28)); *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *17 (N.D. Ala. Aug. 29, 2016) ("[A] claim for individual liability under Section 1981 requires an affirmative showing linking the individual defendant with the discriminatory action." (*quoting Hicks v. City of Alabaster, Ala.*,

2013 WL 979070, at *7 (N.D. Ala. Mar. 12, 2013)).

### c.  The Cat's Paw Doctrine

The argument that decision-making employees took personal action against Plaintiff with racial animus is directly contradicted by the "cat's paw" doctrine expressly invoked by Plaintiff. (*See* Amd. Compl. ¶ 27).  Under the "cat's paw" theory, a defendant employer "may be held liable for the racial animus of its non-decision-making employee when … that employee's discriminatory conduct causes a decision-making employee to take an injurious action against the plaintiff." *Ziyadat*, 3 F.4th at 1298.  That is, discriminatory causation for an adverse action "may be established if the plaintiff shows that the decisionmaker followed the biased recommendation without independently investigating the complaint against the employee.  In such a case, the recommender is using the decisionmaker as a mere conduit, or 'cat's paw' to give effect to the recommender's discriminatory animus."  *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (11th Cir. 1999) (*citing Llampallas v. Mini–Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998)).  As such a "cat's paw" case can confer liability onto the corporate employer (here the BAA) and the non-decision-making employee who makes a recommendation or report against the plaintiff might be personally liable only where the non-decision-making employee acts both out of a prohibited motive and with the intent that the plaintiff will suffer an actionable adverse action. *Staub v. Proctor Hosp.*, 562 U.S. 411, 419 (2011); *Ziyadat*, 3 F.4th at 1296-98 ("When the intentionally discriminating employee does not herself have decision-making authority, the plaintiff must plausibly allege that the discriminating employee's racial animus (1) was intended to cause and (2) did cause the [Plaintiff's] injury.").

By contrast, the "technical" or "formal" decisionmaker in a "cat's paw" case is not personally liable, because that individual does not themselves act out of a prohibited animus;

rather, they are an unwitting "dupe" who is manipulated into *giving effect* to the prohibited animus

of the *other employee* who makes the biased recommendation or report.  *See Staub*, 562 U.S. at

419; *Harris v. Public Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023);

*Martin v. Shelby Cnty. Bd. of Educ.*, 756 F. App'x 920, 925 (11th Cir. 2018) (holding that, "even

if [the plaintiff] had been deprived of a constitutional right" by being denied a job promotion, the

members of the defendant Board that made the formal decision were entitled to summary judgment

in their personal capacity because the plaintiff had "not shown discriminatory motive on the part

of the Board's individual members in accepting the interview panel's [allegedly discriminatory]

recommendation to hire [a competing candidate of a different race]"); *see also Brnovich v.

Democratic Nat'l Comm.*, 594 U.S. 647, 689 (2021) ("A 'cat's paw' is a 'dupe' who is "used by

another to accomplish his purposes."  (*quoting* Webster's New International Dictionary 425 (2d

ed. 1934)).

### ii.  Legal Analysis

No one questions that § 1981 and § 1983 authorize individual liability against a person

alleged to have intentionally discriminated through their exercise of authority granted by their

employer by alone deciding to take a tangible, adverse employment action against a plaintiff.  *See

Busby*, 931 F.2d at 781-82.  It is likewise undisputed that termination of employment and a

suspension without pay are actionable adverse actions for purposes of such claims.  *See Davis v.

Legal Servs. Alabama, Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021) ("[A]dverse employment actions

include 'tangible employment actions,' which are those actions 'that affect continued employment

or pay—things like terminations, demotions, suspensions without pay, and pay raises or cuts ….'"

(*quoting Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020)).  However, while

Plaintiff claims that "he was suspended and ultimately discharged *by the BAA* because of his race"

14

(Amd. Compl. at 1, unnumbered introductory sentence (emphasis added)).  Plaintiff does not allege that Mathieu or Maddox made the decision to suspend or fire him, either alone or in tandem, without the involvement of Lima and Payne.

What Plaintiff argues, rather, is that "individual liability generally attaches where a Plaintiff plausibly alleges that an individual *participated in* a discriminatory decision" (Doc. 16 at 5 (emphasis added)).  Plaintiff argues that the Amended Complaint supports his assertion that "Mathieu and Maddox were each *involved in* the decisions to discipline Plaintiff and/or to terminate his employment, thus subjecting them to liability." (Doc. 16 at 6 (emphasis added)). However, as further explained below, an individual's "participation" or "involvement" in the decision-making process is not itself enough to impose liability under § 1981 or § 1983, even assuming that the ultimate outcome of that process was an adverse action "caused" by unlawful racially discriminatory animus.  Specifically, a plaintiff has the further burden under both statutes to plead and prove that the "participatory" conduct of the formal decisionmaker defendant was motivated by a purpose and intent on their part to discriminate unlawfully, meaning here that such defendant's actions would not have been undertaken but for considerations of race.  *See Iqbal*, 556 U.S. at 676.

### a. Mathieu

Plaintiff expressly alleges that the decisions to suspend him and terminate his employment occurred in "cat's paw" scenarios, with "[t]he 'cats [sic] paw decisionmakers on both Plaintiff's suspension and his discharge" being Defendants Lima and Payne.[3]  (Amd. Compl. ¶ 27).  Plaintiff further asserts that "Defendant Ronald Mathieu approved the discharge of the Plaintiff, based

---

[3] It is not alleged in the Amended Complaint whether Plaintiff's suspension had to be or was approved by Mathieu.

solely on the recommendation of Defendants Lima and Payne." (*Id.* ¶ 26). That is the Amended Complaint's lone substantive allegation against Mathieu. As such, Plaintiff has failed to plead facts suggesting that Mathieu participated in any fashion in the suspension decision. Plaintiff does not argue to the contrary his Opposition to the Motion to Dismiss the Amended Complaint. (Doc. 16 at 9-10 (arguing only that Mathieu participated in the discharge decision)). Accordingly, Mathieu's motion to dismiss is due to be granted to the extent that Plaintiff seeks to hold Mathieu personally liable for the suspension.

The Amended Complaint does support Plaintiff's allegation that Mathieu participated in the termination decision. Plaintiff claims that Mathieu, BAA's CEO, "approved the discharge" based on recommendations from Lima and Payne, indicating that Mathieu was the "formal" decisionmaker. In his Response to Defendants' Motion to Dismiss the Amended Complaint, Plaintiff argues that the allegation that Mathieu "'approved' the discharge suggests that he had knowledge of the alleged pretextual basis for the discharge; at the very least the allegation provides 'some affirmative link to causally connect the actor with the discriminatory action.'" (Doc. 16 at 10 (*quoting Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978, 983 (10th Cir. 1991)). The undersigned disagrees. Even standing alone, that allegation is simply too slender a reed to support that Mathieu not only approved the Plaintiff's termination but also had actual knowledge that the recommended termination of the Plaintiff was the product of racial bias. Further, Plaintiff does not assert that Mathieu acted out of his own intent to racially discriminate.

Even assuming there could be some lingering question that Mathieu might have personally discriminated against Plaintiff because of race, any such inference is negated by Plaintiff's "cat's paw" allegations. *See generally Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff … can plead himself out of court" through factual allegations showing

16

there is no viable claim).  Specifically, Plaintiff alleges both that: (1) Lima and Payne were "the cats [sic] paw' decisionmakers on … Plaintiff's … termination" and (2) Mathieu "approved the discharge … based solely on the recommendations" of Lima and Payne.  As discussed above, the "cat's paw" theory is a claim that the formal decisionmaker is a neutral actor who has been used to give effect to the unlawful bias of a recommending subordinate.  *See Staub*, 562 U.S. at 416 (recognizing that a "'cat's paw' case" is one in which the plaintiff has "sought to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision"); *Monds v. Quitman Georgia*, 767 F. App'x 750, 754 n. 2 (11th Cir. 2019) ("The cat's paw theory applies only when actual decision-makers blindly rely on the recommendation of a discriminatory non-decision-maker without undertaking an independent investigation.").

Thus, Plaintiff has effectively claimed that Mathieu was a neutral decisionmaker whose approval of the discharge gave effect to the unlawful racial animus of "the cat's paw decisionmakers," Lima and Payne.  Because the Amended Complaint does not support a plausible inference that Mathieu himself acted out of a racially discriminatory animus in approving the discharge or caused Lima and Payne to act with racial animus, the motion to dismiss is due to be granted as it relates to Plaintiff's claim that Mathieu is personally liable for either adverse action.

### b.  Maddox

Plaintiff likewise does not expressly allege that Defendant Maddox made the decision to suspend Plaintiff or the decision to terminate him.  Plaintiff says that Maddox, the BAA's Vice President of Human Resources, was not his supervisor and did not observe or inspect his daily work.  (Amd. Compl. ¶ 13).  Plaintiff does allege, however, that it was Maddox who notified him at the December 2, 2021 meeting that he was being suspended.  (Amd. Compl. ¶ 17).  Plaintiff further claims that, when Plaintiff responded at the meeting by verbally objecting and attempting

to explain that the discipline was erroneous or otherwise unfair, it was Maddox who replied that the suspension was "final" and that because Plaintiff's associated misconduct was so "egregious," the discipline would be his "Final Warning."   (Amd. Compl. ¶¶ 17-19).   These allegations reasonably support that Maddox was at least involved in the process by which it was decided that Plaintiff was suspended.

The Amended Complaint is less clear regarding Maddox's involvement in the decision to terminate Plaintiff's employment.   Plaintiff alleges that Maddox attended the meeting where he was notified of his termination.   (See Amd. Compl. ¶ 22).   However, Plaintiff does not claim that Maddox said or did anything at the "termination" meeting.   Again, Plaintiff alleged that it was Mathieu who "approved" the discharge.   (Amd. Compl. ¶¶ 26, 27).   Given the lack of any allegation otherwise specifying Maddox's role, it cannot be reasonably inferred that Maddox was involved in the substantive decision to terminate Plaintiff's employment.   Instead, it appears that she was simply performing her role as a Human Resources department representative at the termination meeting.   *See Farber v. American Fam. Mut. Ins. Co.*, 46 F. Supp. 3d 903, 913 (E.D. Mo. 2014) (rejecting that plaintiff's argument that it "[could] be reasonably inferred" just from evidence of the fact that that the defendant's human resources regional manager was present at the plaintiff's termination meeting that such manager was either involved in the decision to terminate the plaintiff or had made critical reports about him).

Even assuming that Maddox was involved in the termination decision in some way, personal liability in this context does not follow under either § 1981 or § 1983 just from an individual's "participation" or "involvement" in a decision—even if that the process results in the taking of adverse action that might be said to have been caused by unlawful race discrimination. Rather, personal liability requires a showing that Maddox's own conduct was itself motivated by

intentional race discrimination and that such conduct caused Plaintiff's suspension, termination, or both.  *See Iqbal*, 556 U.S. at 676.  The Amended Complaint fails to allege sufficient facts to support such necessary inferences.

Again, Plaintiff has expressly alleged that Defendants Lima and Payne, were "the cats [sic] paw decisionmakers on both Plaintiff's suspension and his discharge."  (Amd. Compl. ¶ 27).  As explained above, that is a claim that Lima and Payne made recommendations against Plaintiff out of a racially discriminatory bias.  Therefore, to the extent that the Amended Complaint might be construed to allege that Maddox was acting as "formal" decisionmaker with regard to the suspension and/or discharge, Plaintiff's "cat's paw" allegation amounts to a claim that Maddox did not act out of racially discriminatory animus but was instead merely manipulated into giving effect to the animus of Lima and Payne.  Finally, insofar as Plaintiff further alleges that Mathieu "approved" Plaintiff's discharge "based *solely* on the recommendations of Defendants Lima and Payne" (Amd. Compl. ¶ 26), that affirmatively suggests that, even if Maddox might have done or said something in connection with the process by which Plaintiff was terminated, Mathieu did not rely on it.

Because the Amended Complaint does not support a plausible inference that Maddox acted out of a racially discriminatory animus with regard to Plaintiff's suspension or termination, the motion to dismiss is due to be granted as it relates to Plaintiff's claim that Maddox is personally liable for those adverse actions.

**IV. Conclusion**

Based on the foregoing, the motion to dismiss the Complaint (Doc. 5) is **DENIED AS MOOT**.  The motion to dismiss the Amended Complaint, filed by Defendants Mathieu and Maddox (Doc. 12) is **GRANTED**.  Accordingly, Plaintiff's claims against Defendants Mathieu and Maddox are **DISMISSED**.

DONE this 4th day of September, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

20